53 CCPA

**Application of Philip M. CARABATEAS.**
**Patent Appeal No. 7517.**

United States Court of Customs and Patent Appeals.
Feb. 10, 1966.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.\*

Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

ALMOND, Judge.

Philip M. Carabateas appeals from the decision of the Board of Appeals affirming the rejection of claims 13 to 21 and 26 to 29 in his application [1] for "Organic Compositions and Their Preparation.".

The invention in all its aspects can best be understood by reference to the following schematic diagram of the processes here involved:

where:

Ar, Ar' are aromatic groups, e.g.⟨ ⟩
Y is lower alkylene, e.g. $-CH_2CH_2-$
R·CO is lower carboxylic acyl, e.g. $CH_3CO$, and
X is halogen, e.g. Cl

Compounds: of Formula:

I = Claims 17-21, 28, 29 on appeal

II = Claims 3, 5-7, 9-12, 25 )    )
                                ) 34 ) allowed
III = Claims 2, 4, 8, 24        )    )

1. Serial No. 12,909, filed March 7, 1960.

Appealed claims 17 to 21, 28, and 29 describe 4-aryl-4-piperidinols substituted on the heterocyclic nitrogen (1-position), 3-alkyl derivatives thereof, and their acid-addition salts. These compounds serve as the starting materials in the monoacylation process described in appealed claims 14, 16, and 27 and the diacylation process described in claims 13, 15, and 26.

Claims 13, 14, and 18 are representative, respectively, of the diacylation process, the monoacylation process, and the starting materials used therein, and read as follows:

13. The process for the preparation of a member selected from the group consisting of 4-(lower-carboxylic-acyloxy)-1-[N-(mono- and bicyclic-aromatic) -N- (lower-carboxylic-acyl) amino-(poly-carbon-lower-alkyl)]-4-(monocarbocyclic-aryl having six ring-carbon atoms and naphthyl)-piperidine which comprises reacting a member of the group consisting of 1-[(mono- and bi-cyclic-aromatic-amino) - (polycarbon-lower-alkyl)] -4- (monocarbocyclic-aryl having six ring-carbon atoms and naphthyl)-4-piperidinol with two molar equivalent quantities of a lower-carboxylic-acylating agent selected from the group consisting of lower-carboxylic acid anhydrides and lower-carboxylic acid halides.

14. The process for the preparation of a member selected from the group consisting of 1-[N-mono- and bi-cyclic-aromatic) - (N- (lower-carboxylic-acyl)amino) - (polycarbon-lower-alkyl)] -4- (monocarbocyclic-aryl having six ring-carbon atoms and naphthyl)-4-piperidinol which comprises reacting a member of the group consisting of 1-(mono- and bicyclic-aromatic-amino) - (polycarbon-lower-alkyl)] - 4-monocarbocyclic-aryl having six ring-carbon atoms and naphthyl)-4-piperidinol with one molar equivalent quantity of a lower-carboxylic-acylating agent selected from the group consisting of lower-carboxylic acid anhydrides and lower-carboxylic acid halides.

18. A compound having the structural formula

where R represents lower-alkyl, Y represents polycarbon-lower-alkylene and Ar represents monocarbocyclic-aryl having six ring-carbon atoms.

The appealed claims stand rejected as unpatentable over prior art under 35 U.S.C. 103. The references relied on are:

| | | |
|---|---|---|
| Crooks et al. | 2,514,376 | July 11, 1950 |
| Elpern I | 2,824,875 | February 25, 1958 |
| Elpern II | 2,846,437 | August 5, 1958 |
| Elpern III | 2,850,500 | September 2 , 1958 |
| Elpern IV | 2,880,211 | March 31, 1959 |

The patentability of the process and product claims will be considered separately.

## PROCESS

Process claims 13 to 16, 26 and 27 were rejected as being directed to conventional acylating procedures as shown by Crooks et al. This reference discloses the stepwise acylation of compounds containing an $-NH_2$ radical, a $-CH_2OH$ radical, and a $-CHOH$ radical. Exemplary of such compounds is 1-o-methylphenyl-2-aminopropane-1,3-diol having the formula:

$$\text{C}_6\text{H}_3(\text{CH}_3)-\overset{\overset{\displaystyle OH}{|}}{CH}-\overset{\overset{\displaystyle NH_2}{|}}{CH}-CH_2OH$$

Reacting the above compound with an excess of acetyl chloride in dry benzene at room temperature results in the formation of the N-acylated compound 1-o-methylphenyl- 2-acetamido-propane- 1,3-diol. Reacting this latter compound with an excess of acetic anhydride at 70–80° C. for fifteen minutes results in the acylation of the primary alcohol to yield 1-o-methylphenyl- 2-acetamido-3-acetoxy-propane-1-ol. Reacting the latter compound with a 1:1 by volume mixture of acetic anhydride and pyridine at 100° C, for about thirty minutes results in acylation of the secondary alcohol to yield the triacetate.

Appellant contends that the differences in number, type, and location of the acylatable radicals of Crooks et al.'s compounds as compared to those on appellant's compounds, together with differences in the type and quantity of acylating agent employed in the respective processes, are such as to make the appealed process claims nonobvious.

We disagree with this contention. Crooks et al. disclose the use of acetic anhydride and acetyl chloride as agents for the stepwise acylation of the amino and alcohol radicals of the starting material. This reference teaches that ease of acylation follows the descending order: primary amine, primary alcohol, secondary alcohol. While not absolutely predictable, we believe that this teaching would suggest to a chemist having ordinary skill that one mole of an acylating agent such as acetic anhydride would react with a secondary amino group in preference to a tertiary alcohol group, as is the case with appellant's claimed process. While it is true that the acylatable groups of Crooks et al.'s compounds are located in significantly closer proximity to one another than the analogous groups of appellant's compound, no reason appears in the record why such a difference should be accorded patentable significance.

Appellant asserts that in certain instances Crooks et al. do not effect stepwise acylation of the primary amino group and the primary alcohol function but instead obtain diacylation in one step. This argument relates only to the patentability of claims 14, 16, and 27, which call for selective acylation of the imino group, as the other process claims, viz. 13, 15, and 26, recite a one-step diacylation process. However, it is clear from the reference that whether acylation of the primary amino and primary alcohol groups is accomplished in one or two steps depends on a suitable selection of acylating agent and reaction conditions. The fact that acylation can be accomplished in one step does not detract from the disclosure that the reaction can be controlled to provide a two-step process. Moreover, for purposes of this discus-

sion, amino-*secondary* alcohol acylation as taught by Crooks et al. is more pertinent than amino-*primary* alcohol acylation since the former more nearly resembles the secondary amino-tertiary alcohol acylations recited in the instant claims. Crooks et al. reveal that the amino-secondary alcohol acylation occurs in a stepwise manner.

In summary, we believe that both the selective monoacylation process recited in claims 14, 16, and 27 and the diacylation process recited in claims 13, 15, and 26 would be obvious in view of Crooks et al. The decision of the board is *affirmed* as to these claims.

## PRODUCT

Claims 17–21, 28 and 29 were rejected as unpatentable over Elpern III in view of Elpern II, with the Elpern I to IV patents showing collectively the equivalence of 4-aryl-4-piperidinol esters and isonipecotic acid esters.

*Elpern III* discloses 4-phenyl-4-OH-N-aryloxy-lower alkylene-piperidines having the formula:

$$R = H \text{ or lower alkyl}$$
$$Ar = \bigcirc$$

where Z is -O-(oxygen) or -S-(sulphur). The 4-OH group of the above compound can be acylated and the resultant product exhibits analgesic activity.

*Elpern II*, the secondary reference, discloses 4-phenyl-isonipecotic acid esters having the formula:

$$Ar = \bigcirc$$

[has analgesic activity]

where Z is either O, S, SO, SO₂, NH or N (lower alkyl).

*Elpern I* discloses lower alkyl 4-phenyl-1-(3-phenyl-alkenyl and alkynyl) piperidine-4-carboxylates having the formula:

$C_6H_5$    COO-(lower alkyl)

[chemical structure: piperidine ring with C bearing C6H5 and COO-(lower alkyl), CH2 groups, N substituted with Z—C6H5]

where

$C_6H_5$—Z—

may be radicals typified by:

$C_6H_5CH=CHCH_2$—
$C_6H_5CH_2CH=CH$—
$C_6H_5C≡CCH_2$—

or

$C_6H_5CH_2C≡C$— .

**Elpern IV** teaches the following process:

[chemical structures showing reaction: piperidine with OH + acylating agent → piperidine with O-C(=O)-CH3]

+ acylating agent ——→    [has analgesic activity]

---

The examiner's position with regard to the instant compound claims, disclosed as analgesics, was stated as follows:

Product claims 17 to 21 and 28 to 29 stand rejected as being unpatentable over Elpern III who teaches generically 4-phenyl-4-OH-N-aryloxy-lower alkyl and N-arylmercapto-lower alkyl piperidines in view of Elpern II who teaches the functional equivalence of N-arylamino, N-aryloxy and N-isonipecotic acid esters. Suggested functional equivalents of the prior art are deemed obvious under 35 U.S.C. 103. The equivalence of 4-aryl-4-piperidinol esters and isonipecotic acid esters is exemplified by the Elpern I, II, III and IV patents taken collectively.

The herein claimed compounds would be suggested as being useful for making analgesic 4-phenyl-4-

acyloxy -N- arylaminoalkyl piperidines and such suggested compounds are deemed obvious under 35 U.S.C. 103.

As appellant's counsel points out, the reasoning of the examiner and the board is rather involved. The Z-substituent of the piperidinols disclosed in Elpern III may be an oxygen or sulfur atom whereas the corresponding Z-substituent of appellant's claimed piperidinols is an imino radical. The esters of Elpern II, however, may have, inter alia, O, S, or NH as the corresponding Z-substituent. The board noted further that where Z is an oxygen or sulfur atom, the esters of Elpern II and III differ only in the relative positions of the atoms making up the ester group attached to the 4-position of the piperidine ring, as is also true of the esters of Elpern I and IV. Elpern I–IV disclose that the respective esters all have analgesic activity and it is this common property which the examiner and the board argued established the equivalency of 4-aryl-4-piperidinol esters and isonipecotic acid esters. This equivalency, plus the equivalency of the O, S, and NH groups in Elpern II, suggested to one of ordinary skill in the art, in the board's view, that the Z-substituent of the Elpern III *esters* may also be NH. Once this is established, it was argued, it would be obvious that the Z-substituent of the Elpern III piperidinol *starting compounds* may be NH, thus arriving at the structure of the instant claimed piperidinols. We do not believe this latter step in the board's reasoning process is warranted by the prior art.

The issue here is whether the claimed compounds are obvious under 35 USC 103. We believe the issue must be answered in the negative.

The reasoning of the examiner and the board ignores the fact that the presence of an imino group on the *piperidinol* of Elpern III would, according to the prior art of record, have resulted in the formation of an acylimido group when the

piperidinol was reacted with an acylating agent. There is nothing in Elpern II to suggest that the substituted piperidine starting materials could have two substituents capable of acylation. The presence of the imino radical in the Elpern II ester is explained by the fact that the carboxyl radical on the 4-position of the piperidine starting material is esterified with an *alcohol* which would *not* acylate the imino group on the 1-substituent. None of the Elpern references contemplates a compound capable of diacylation. Only the instant application was concerned with diacylation and it is improper to use such disclosure as prior art.

The board's reasoning begins by considering the *esters* of the Elpern II and III references and moves from there to a consideration of the piperidinol starting material of the Elpern III reference. No mention is made of the starting material of the Elpern II reference which is a *carboxylic acid* having the structural formula:

It seems to us that to the extent esterification-deesterification processes are to be considered at all, and clearly the examiner and board placed much reliance thereon, the most meaningful comparison between prior art compounds and the claimed compounds is between the starting materials for the esters. The starting material of the ester disclosed in Elpern II has a carboxyl group in the 4-position of the piperidine ring and may have an imino group in the 1-substituent.

Considering the imino group vis à vis the carboxyl group, one salient feature is immediately apparent which is that the carboxyl group can be esterified by reacting with an alcoholating agent whereas the imino group will be unaffected by such an agent. Thus, one can obtain the desired ester of Elpern II by a simple esterification.

Turning to the starting material of Elpern III, we note that the piperidine ring has a *hydroxyl* group in the 4-position and may have either an oxygen or sulfur atom, but no imino group, in the 1-substituent. To form the desired ester of Elpern III, it is necessary to react the piperidinol with an acylating agent. The oxygen or sulful atom on the 1-substituent *is inert to such acylating agent.* The oxygen or sulfur atom on the the desired ester. The board's position is that the piperidinol of Elpern III could also have an imino group in the 1-substituent just as does the piperidineoic acid of Elpern II, but if such were true, the prior art tells us that *the acylating agent would react first with the imino group* to form an acylimido group. Depending on the quantity of acylating agent employed, the result would be a substituted piperidine having an acylimido group in the 1-substituent and a hydroxyl group on the 4-position, or an acylimido group in the 1-substituent and an ester group in the 4-position. In neither instance would there be obtained the ester disclosed in Elpern III.

The solicitor urges this court to consider the references for what they reasonably and realistically teach in relation to what is claimed, citing In re Krogman, 233 F.2d 497, 42 CCPA 1037. In doing so, we conclude that the subject matter of claims 17–21 and 28–29 is nonobvious under 35 U.S.C. 103.

The decision of the board with respect to claims 17–21 and 28–29 is reversed; the decision with respect to claims 13–16, 26 and 27 is affirmed.

Modified.

MARTIN, J., concurs in the result.